UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY LOUISE FORD,<br><br>    Petitioner,<br><br>    v.<br><br>D. K. JOHNSON, Warden,<br><br>    Respondent. | NO. EDCV 12-2227-AB (AGR)<br><br>ORDER ACCEPTING FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

      Pursuant to 28 U.S.C. § 636, the Court has reviewed the petition, the other records on file, and the Report and Recommendation of the United States magistrate judge. Further, the Court has engaged in a *de novo* review of those portions of the Report to which Petitioner has objected. Petitioner filed an application for a certificate of appealability. The Court accepts the findings and recommendation of the magistrate judge.

      Petitioner seeks to amend the petition to add a claim under Ground Four (instructional error) based on *People v. Chiu*, 59 Cal. 4th 155 (2014). Petitioner contends that the ruling regarding natural and probable consequences in *People v. Chiu* would render her sentence invalid. (Objections at 11.)

      Petitioner's proposed amendment would be futile. Petitioner was found

guilty of theft from an elder adult, burglary, unauthorized use of an access card and unauthorized use of personal identifying information. (LD 1 at 164-67.) In *Chiu*, the California Supreme Court held that an aider and abettor may not be convicted of first degree premeditated murder under the natural and probable consequences doctrine. 59 Cal. 4th at 158. "In the context of murder, the natural and probable consequences doctrine serves the legitimate public policy concern of deterring aiders and abettors from aiding or encouraging the commission of offenses that would naturally, probably, and foreseeably result in an unlawful killing." *Id.* at 165. "Aider and abettor liability under the natural and probable consequences doctrine does not require assistance with or actual knowledge and intent relating to the nontarget offense, nor subjective foreseeability of either that offense or the perpetrator's state of mind in committing it." *Id.* Unlike second degree murder, first degree murder "has the additional elements of willfulness, premeditation, and deliberation," which are "uniquely subjective and personal." *Id.* at 166. The connection between an aider and abettor's culpability and the perpetrator's premeditative state "is too attenuated to impose aider and abettor liability for first degree murder under the natural and probable consequences doctrine, especially in light of the severe penalty involved[.]" *Id.* The aider and abettor may be convicted of second degree murder under the natural and probable consequences doctrine. *Id.* There is nothing in the holding of *People v. Chiu* that would render Petitioner's conviction or sentence invalid.

  In connection with Ground Two (ineffective assistance of counsel), Petitioner argued in one subclaim that her counsel failed to investigate mitigation and failed to challenge an erroneous probation report. The Report noted, among other things, that Petitioner had not identified any facts in mitigation or errors in the probation report. (Report at 23.) In her objections, Petitioner identifies two errors in the probation report. Petitioner contends that the dates of incarceration

in 1982 were incorrect and that she served "one continuous sentence" in the California Youth Authority and not "several prison terms." (Objections at 9-10.) The Report correctly determines that Petitioner has not shown prejudice. None of these alleged errors affected the trial court's sentence or reasoning. The trial judge relied on Petitioner's adult convictions. Petitioner admitted a prior conviction for murder on September 23, 1982,[1] and a prior conviction for false impersonation on July 20, 2003. (LD 2 at 375-77.) The trial judge doubled Petitioner's sentence due to her prior strike (the murder conviction) and imposed one additional year for one prison prior. (*Id.* at 401, 403.)

Finally, Petitioner objects that the Report did not address Subclaim II of Ground Three (insufficient evidence). (Objections at 4.) In that subclaim, Petitioner argues that the prosecutor committed misconduct by misstating evidence during closing argument and in opposing Petitioner's motion for new trial. (Petition, Attachment A at 13.)

"The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (citation omitted); *see Parker v. Matthews*, 132 S. Ct. 2148, 2153, 183 L. Ed. 2d 32 (2012). Determining whether prosecutorial misconduct occurred during closing argument requires an examination of the entire proceedings so the prosecutor's remarks may be placed in proper context. *Boyde v. California*, 494 U.S. 370, 384-85, 110 S. Ct. 1190, 108 L. Ed. 2d 316 (1990). Even when prosecutorial misconduct rises to the level of a due process violation, it is subject to harmless error analysis. *Brecht v. Abrahamson*, 507 U.S. 619, 638, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1992) (error is harmless unless it had "substantial and

---

[1] The trial judge accepted the defense argument that she had served seven years in prison for murder. (LD 2 at 395, 397.)

1  injurious effect or influence in determining the jury's verdict").

2  Petitioner has not shown that the prosecutor misstated evidence in closing
3  argument.

4  1.   Petitioner argues that the prosecutor misstated that fraudulent
5  transactions were made with two cards, whereas only card 0503 was used
6  fraudulently.  (Petition, Attachment A at 13.)  However, the prosecutor stated:
7  "When you look at the bank records in conjunction with her testimony about which
8  transactions were made without her permission, you can see that those
9  transactions were made with two different cards."  (LD 2 at 303; *Id.* at 312.)  The
10 prosecutor's argument is an accurate description of the evidence.  Petitioner's
11 mother identified fraudulent transactions on her bank account statement,
12 including Alessandro Food-4-Less, Arco in Moreno Valley, Best Buy and Office
13 Max.  (LD 2 at 79-82.)  Investigator Loveless testified that those four transactions
14 were done with two separate cards.  (*Id.* at 144.)

15 2-4.  Petitioner argues that the prosecutor misstated that Petitioner's
16 mother noticed that one of her cards was missing and "based on other evidence
17 that was presented, we know that that card that was missing was 0503.  And the
18 reason that we know this is because she said that the card that she rarely used,
19 that's the one that went missing."  (LD 2 at 304.)  Petitioner's third and fourth
20 challenge to the prosecutor's closing argument also involve card 0503.  (Petition,
21 Attachment A at 13.)  Petitioner argues that her mother never had card 0503.  For
22 the reasons stated in the Report at pages 8-10, the prosecutor argued
23 reasonable inferences from the evidence.  *United States v. Young*, 470 U.S. 1, 9
24 n.7, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) (lawyer may argue all reasonable
25 inferences from evidence in closing argument).

26 5.   Petitioner argues that the prosecutor misstated the evidence in saying:
27 "Regardless of whether she [Petitioner's mother] found it in her dresser drawer,
28

1  which she testified she never put it, or whether the defendant handed it to her,
2  either way it was back in her house after it had been missing and used
3  fraudulently." (LD 2 at 305.)  Petitioner contends her mother never made any of
4  these statements.  However, Petitioner's mother testified that she noticed the
5  card was out her wallet after being notified by the bank of the problem.  (*Id.* at
6  85.)  She never put it in the dresser drawer.  (*Id.* at 95.)  As the prosecutor
7  acknowledged, this area of Petitioner's mother's testimony was "confused."  (*Id.*
8  at 305.)  At one point, Petitioner's mother testified that Petitioner returned the
9  card to her.  (*Id.* at 130.)  At another point, she testified that "the other card
10 showed up in my bedroom in the drawer."  (*Id.* at 134-35.)  She found it, not
11 Petitioner.  (*Id.* at 136-37.)  The prosecutor's argument was based on the
12 evidence.  Moreover, the prosecutor's argument was that the important point was
13 not how Petitioner's mother got her card back but rather that her card reappeared
14 only after it went missing and was used fraudulently.  (*Id.* at 305.)  Petitioner has
15 not shown prosecutorial misconduct or prejudicial error.

16      6.   Petitioner argues that the prosecutor misstated evidence to the court in
17 opposing Petitioner's motion for new trial:  "One of the most powerful pieces of
18 evidence presented in this case was the fact that the banking card of the victim
19 was removed from her home prior to the thefts and then placed back in her home
20 after the thefts had been completed."  (Petition, Attachment A at 14 (quoting LD 1
21 at 210).)  Petitioner again argues that her mother never had card 0503 in her
22 possession.  However, for the reasons stated in the Report at pages 8-10, the
23 prosecutor argued reasonable inferences from the evidence.  *Young*, 470 U.S. at
24 9 n.7.

25      7.   Petitioner argues that the prosecution presented a theory to the jury
26 that was not supported by any evidence, namely, that someone else got into
27 Petitioner's mother's house and took the cards.  (Petition, Attachment A at 14.)
28

5

Petitioner misreads the argument. The prosecutor asked a rhetorical question: "So what's the alternative? What's the possibility that leads to innocence? Someone other than the defendant got into [Petitioner's mother's] house and her wallet and took both cards, 4100 and 0503, without [Petitioner's mother] noticing. . . . Ladies and gentlemen, I would suggest that that theory, the coincidences that would have to take place, well, maybe it's possible, but it just isn't reasonable." (LD 2 at 325-26.)

8. Petitioner mistakenly attributes another theory to the prosecution. At the pages quoted by Petitioner, the prosecutor is actually describing one of the accomplice's versions of what happened. (LD 2 at 308.) The prosecutor's point was that even if that version is true, Petitioner would still be guilty under the law. (*Id.* at 308-09, 319-20.)

Petitioner has not shown the prosecutor's statements so infected the trial with unfairness as to make the conviction a denial of due process. *Darden*, 477 U.S. at 181.

Petitioner's remaining objections are without merit. Petitioner's request for appointment of counsel (Dkt. No. 24) is DENIED.

IT THEREFORE IS ORDERED that judgment be entered denying the petition and dismissing this action with prejudice. Petitioner mistakenly filed a notice of appeal before judgment was entered. A notice of appeal must be filed "within 30 days after entry of the judgment or order appealed from." Fed. R. App. P. 4(a)(1).

DATED: April 16, 2015

ANDRÉ BIROTTE JR.
United States District Judge